May it please the Court, I am Bruce Lichty on behalf of the appellants Sean Lim Yith and Sik Leong Yith, citizens of Cambodia. This country usually does not penalize people based on the sins of the fathers. We don't visit the sins of the fathers and the children. Now, of course in this question there's also, or in this case there's also a question as to whether or not the word sin should even be applied here. And I'll get into that, but that's the government's allegation that there was marriage fraud committed by the father. Well, you used the word sin, nobody else did. I hear you. I'm just using it as a device. But we also in this country do take the requirements for naturalization very seriously. And I do recognize that there is precedent for visiting the sins of the fathers on the children, as it were, in some cases. And that is, it's a very narrow category, I guess. If you're not lawfully admitted, then you're not eligible for citizenship. Isn't the problem in this case that your clients were relying on the bona fides of the marriage of their father to establish admission? Isn't that why the father's marriage is important in this case? Correct, except I would frame it a little bit differently. I don't believe that they had to prove the bona fides of that marriage. The government does. Well, if the government established that the marriage was not a bona fide marriage, then they would not have eligibility for naturalization. Right, although then the question becomes, would they have had to establish it prior to this naturalization proceeding? We contend that they would have. That it doesn't belong. I don't understand that last point you made. You said would they have had to establish it before the naturalization proceeding? Right. What is your point there? So, yeah, the government could have, at the first point, that they believe that there was marriage fraud, put Nathias, the father of my clients, into removal proceedings. They could have attempted to rescind his own status, or they could have done something else directly to rescind the status of my clients. But was the government required to do that in order to make a ruling that your clients were ineligible for naturalization? My contention is that once you get to naturalization, yes, if they're going to bring those issues in under very unique circumstances here, at least, that there was that requirement, that threshold requirement, that you can't turn this kind of a proceeding into a mini-trial on marriage fraud. Go ahead. Counsel, my question was, do you have a case that says that? There are no cases, Your Honor. No, I mean, this is a case really of first impression on its facts. The cases, however, what we're arguing really is that constitutionally, it's not, there's no due process to my clients if they have to go into a naturalization proceeding like this and try to prove a negative, try to prove that their father and stepmother did not commit marriage fraud, try to prove, as suggestion has been made here, that the government acted with all regularity in each and every step of the way. Why is that proving, why is it proving a negative as opposed to proving they had a bona fide marriage? Well, they have to prove that they were not, they have to prove that they were lawfully admitted instead of the government proving that they were not lawfully admitted. When all of that evidence is really in the hands of the government or the government has the main capacity in which to establish that. Well, that's, I mean, that's maybe true for some of this, but the district court didn't rely on that. The piece about the apparent criminal offenses of Nelms, for example, I hear you. I mean, that may be hard to disprove as people seeking naturalization, but it doesn't seem, that's, the district court didn't put that off to the side. The issue here is the marriage and it's the children's father and there's no more particularized allegation that he was unavailable or unwilling to help them in their efforts here. I mean, there might be some as-applied challenge in some case on due process grounds, but here the witnesses were there and, or they were able to be accessed by deposition. And so I guess I'm having difficulty seeing why there's a due process problem with having the burden on your clients, at least after the government came forward with what was more than prima facie evidence of marriage fraud. So I raised the issue of the government regularity as an illustration of the type of constitutional problem that is raised when you don't interpret, when you don't construe the statute strictly. So if you don't construe the statute strictly here to require proof only on their part of entry and instead require them to prove lawful admission, which the statutes don't say, and the statutes can be harmonized with the regulation, which appears to, perhaps otherwise, put the burden of proof on them to prove their lawful admission. But, of course, we know there are regulations. I mean, the burden I'm not sure matters here because the district court made a number of findings about just the facts and the relationship between this man and another woman who, if there was a marriage, it was brief and made all kinds of findings about how they didn't live together, they didn't have shared life together, they didn't consummate this marriage, all these different findings that led the district court to conclude that this was not a bona fide marriage. So where is the error in that? So superficially, I agree, it looks very bad. But when you get into the actual case law, recognized by the Supreme Court all the way down, when it comes to proving the bona fides of a marriage, all the parties have to do is prove that they intended to establish a life together. Both of them testified to that effect. Wasn't that the finding that the district court had to make? I mean, the district court heard all of the evidence and then made a ruling. So are you asking us to go behind that ruling and the findings? How can we do that? Well, I think the evidence that the district court had is all in front of this court as well if you do believe that you have to get into the facts. But it's apparent to me, I think it's apparent on the record, that the district court didn't apply that proper test. The district court was looking at all these indicia of absence of a genuine intent that are apparent in other cases, but he missed the forest for the trees or vice versa, if you will, because here he did not even mention the fact that both of the parties testified that they did have the proper intent. And this was just a very unusual situation where old world clashes with new options, old world customs would have produced a marriage that was viable. But in this case, the wife herself admits that, well, she made a mistake and she backed out of the marriage. I mean, actually, they remained married for many years after that. I was going to ask you about that. When did they – they're now divorced? They are divorced now, yeah. How long were they married? I think they were married at least five years, but I hope it's in the record somewhere. If it's not, I think it's at least apparent that they were married. I don't think it can be sufficient just because two people say they intended to be married. I think the district court had a bunch of other evidence that indicated that was maybe not correct. Well, I agree, Your Honor, that it's not sufficient that they both said that because obviously they have a self-interest. But then you look at the actual evidence in terms of the unique circumstances of the marriage and see whether it indicates that they are lying. So that's what has to be looked at here. Was there any evidence brought forth at trial, regardless of who has the burden of proof, to show that they were lying as to their intent? If they weren't lying, if they actually got married, and if this was the case of just the unusual case where the wife backs out before they ever, you know, commingle their lives, then you still have a valid marriage for purposes of immigration. And the government has to prove – we believe that the government has to prove otherwise. Even if we have to prove otherwise. Counsel, was there ever evidence that they lived together? No. Well, there is evidence that they lived together briefly at the parental home of the wife. Now, this was a little bit ambiguous, but there is evidence to that effect. My client contended that. And I think it wasn't expressly denied by Saron Meese, the stepmother, that they actually did live together briefly at the parental home, which would have been the custom of the old-world Cambodian marriage that they were trying to operate in accord with. So they received status – I mean, they were lawful permanent residents. That's their present status? Yes, except their cards have expired. But, yes, they got lawful permanent residence status. So what is their present status today now that their cards have expired? I contend that they're still lawful permanent residents, but they just don't have proof of it and not able to get proof of it. And there's never been a contest that they entered the country legally. And so, again, when you look at 1429 and compare it to 1427, that's the test. They have to prove that they showed legal entry. But there also has to be a lawful admission. But you dispute that there has to be a lawful admission in addition to lawful entry? No, I don't dispute that. I just dispute that either the government has proved that in this case, that there wasn't a lawful admission, and it should have been the government's burden. But even if the court doesn't accept that, that it should have been the government's burden, that fortuitously the fact that this deposition transcript was entered into, which was itself improper, and I can go into that too, but I hope that the court will pay due attention to that argument, that even if that deposition transcript is considered, the deposition testimony of Saren Meis, the stepmother, that that proves that the admission was lawful because all that's needed to prove that was a bona fide marriage. And you had a bona fide marriage here, even though it was quite unusual, and the circumstances ended up that they did not live together or consummate the marriage. So I'm happy to answer. I don't know. Do I get to reserve these three minutes here? Yes, you may. I'll do that then. Thank you. All right. Thank you, counsel. We'll hear from the government. Good morning, Your Honors. May it please the court, Hans Chen from the United States Department of Justice representing the appellees here. This court should affirm the decision of the district court in denying the naturalization applications of the plaintiffs. The plaintiffs came to the court, came to the government, with the claim of a bona fide marriage. That bona fide marriage was the basis for their lawful permanent residence status, and it was the basis for their naturalization application. And so naturally, as a matter of constitutional law, as a matter of statute, as a matter of precedence, Supreme Court and Ninth Circuit precedent, the plaintiffs had the burden of proving that that marriage was bona fide. Judge Bress earlier noted that the burden of proof is perhaps not a dispositive issue here, but before we moved off of that, I did want to address one point that the plaintiffs perhaps clarified in their reply brief, which is the argument that in 1429, Congress, in enacting 8 U.S.C. 1429, mentioned first the requirement for lawful permanent residence, but then discussed lawful entry and the burden of proof of establishing lawful entry as falling on the plaintiffs, and therefore applying the canon of one thing mentioned is to the exclusion of others, then the plaintiffs are excused from proving any other requirement of naturalization other than entry, which they claim they can do. This is not a viable position, Your Honor, first because there's another statute that does set the burden of proof on the plaintiffs. That is 1427E. Plaintiffs have cited 1429 for their argument that the mention of one specific excludes any other. Is the entry, is there an issue about the entry in this case? There's not, Your Honor, which is why we are conceding that they have proven entry. They're saying that that's the only thing they needed to prove because it's the only thing mentioned in 1429. What I wanted to point out today is that at 1427A, there are the requirements, including lawful permanent residence, and in 1427E, which plaintiffs overlooked in their briefs, 1427E says, in determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in subsection A of this section, the attorney general should not be limited in the applicant's conduct during the five years preceding. And it goes on. How far does this go? I mean, because one of the arguments made here, which the district court didn't make a whole lot of, was that there was a, you know, a U.S. government employee who committed some kind of fraudulent act and helped the father get some papers. Do the plaintiffs here bear the burden on that issue, or is that something the government I mean, again, this is a little academic because the district court didn't rely on it, but I'm just not sure that on something like that the government wouldn't bear at least some or a decent part of that burden because how are the plaintiffs supposed to even know about that? Right. What I will say, Your Honor, is that the plaintiffs bore the burden of showing that they had a lawful permanent residence, which was based on a bona fide marriage. Bona fide marriage, to show that, they needed to show that the parties intended to be married, to start a life together, and not get just married for immigration purposes. That's all they needed to prove. That is their burden. So to answer your question, Your Honor, there was evidence that the government presented in its case, even though it did not have the burden of governmental fraud by this U.S. CIS officer. We did that, Your Honor, really to show the intent of the father of the plaintiffs. That was not to show that their lawful permanent residence was necessarily illegally obtained because remember, the plaintiff's lawful permanent residence was obtained from the marriage of their father to their stepmother, a U.S. citizen. So focusing just now on the facts of this case, I take the plaintiff's argument to be that this is a marriage that would not be familiar to most of us here in the United States because it was an arranged marriage and the cultures are different. The marriage did not work out, but at least at the time, at time one, the parties did intend to get married, and then the stepmother decided fairly quickly, it appears, that she did not want that. But that's the argument. Some of this has sort of cultural overtones that differ, I think, from what most people here in America think of as a traditional marriage. So how do you address some of these issues? I address that issue primarily, Your Honor, by pointing out that that is a finding of fact, and there are cases in the government's brief clearly indicating that on a question of whether or not a marriage is bona fide for immigration purposes, that is the determination of fact. And on a question of fact, this court subjects that finding to clear error. And therefore, the district court's finding, which we are, again, urging this court to affirm, is subject to substantial deference by this court. So that, Your Honor, is just to remind the court of the standard of review by this court. And if you apply that standard of review, it's clear there is substantial evidence of a not bona fide marriage, of a fraudulent marriage. Your Honor talked about cultural differences, and there was an exchange at trial, that's obviously in the record, where one of the witnesses, the husband, the father of the plaintiff, who the government called, who the plaintiffs did not call in their case, but he was testifying about traditional Cambodian marriage. The government called him adversely? Yes. Yeah. And he was testifying, Mr. Yip, the father of the plaintiffs, was testifying about cultural traditions, and the court interrupted him and said, well, is it cultural tradition to leave your marriage after seven days? And he answered truthfully that it was not. And so there was an effort by the plaintiffs to raise cultural differences, to argue about arranged marriages, which evidence showed at trial that even if this was an arranged marriage, even if we live in a world where there are arranged marriages that are bona fide, this was not one of them. And again, this decision — What was the suggestion that the payment, the dowry, was really just a payment for fraud? That was a testimony as well, Your Honor, by Mr. Yip. It's not been clearly established either way, but that is something that was evidence for the district court to consider, which led to his finding that this was not a bona fide marriage, which, again, is subject to substantial deference. I will say one last thing about the deference owed to the district court's decision. And in doing so, I wanted to cite and read something from the plaintiff's own reply brief in this appeal. And it's their reply brief at page 20. What they wrote is, in candor, the D.C. And the plaintiffs referred to the district court as the D.C. In candor, the D.C. may have wrestled with the apparent dilemma that a majority of the facts were consistent, either with a good faith intent to establish a life together in the circumstances of an arranged marriage, of a passive person who wanted to stay out of the limelight, or a fraudulent scheme. Those are the plaintiffs' own words. Later in that same paragraph, they wrote, Appellants freely admit that there are facts that can be construed as evidence that the father of Sarah Meese arranged the marriage solely for the immigration benefit of his friend, appellant's father. Again, a concession by the plaintiffs in their own reply brief. And so I wanted to close the significance of those two quotes by citing and reading from a Supreme Court decision, Anderson v. City of Bessemer City, which is obviously a seminal case on appellate review. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. We have a concession by the plaintiffs that there were two permissible views of the evidence, and that means the district court's decision in this case cannot be clearly erroneous, which should lead this court to affirm it. What is the government's position on what should now happen with these two siblings? Well, that may have been raised only in closing arguments, Your Honor. That was not at issue in the trial. The plaintiffs right now have the status of lawful permanent residents except as it relates to their naturalization application. That status has not been revoked. However, they were placed in removal proceedings. And frankly, the government did so because it saw those removal proceedings as a way for the plaintiffs to move forward. And let me explain. Those removal proceedings, obviously, if they were taken to completion, would result in their removal. That hasn't happened. Instead, the removal proceedings have been administratively closed. The plaintiffs have the opportunity now to find a legal pathway to citizenship that is beyond reproach, say, a bona fide marriage to an American citizen, say, a bona fide employment by a U.S. company. If they did that, they could move to reopen the removal proceedings, seek a waiver of any cloud of fraud that might be on them, and that would be a waiver subject to the Immigration Nationality Act, and then resubmit an application for lawful permanent residence. An immigration judge would hear both the waiver application and the new application for a green card. So are they presently lawful permanent residents, or are they presently lawful permanent residents here unlawfully? I don't want to prejudice any proceedings in immigration court, which I said could be reopened, Your Honor. That was not your question. The answer to your question was not determined at trial. And, again, it's unclear because — I mean, if the upshot is that they're not properly admitted to the United States, doesn't it follow that they're not lawful permanent residents as a legal matter? That might be a conclusion for the immigration court to decide. It's not for this court to decide, I would respectfully argue, and it's not for me to take a position outside of the proceedings of an immigration court removal. Counsel? Yes, Your Honor. Isn't the only question for us whether the district court decision in its findings relating to naturalization was clearly erroneous? Yes, Your Honor, that is correct. And it was not clearly erroneous. This court should affirm, and in doing so, you can affirm on narrow grounds, which avoids anybody, the government today or this court, in reaching Judge Bress's question on what their legal status is. That's really, again, and again, Your Honor, Judge Bress, I apologize for evading your question. No, I understand it's not before us, but one does wonder reading this. Yes, and that is the determination, as I said, which is still available to be made in the plaintiff's favor or not, but it will be made, if at all, by an immigration court judge. I wanted to just address one comment that plaintiff's counsel made on the constitutional issues, and I wanted to affirm what Judge Bress mentioned, that there may be an as-applied challenge on the burden of proof being placed on the plaintiffs to establish the bona fides of someone else's marriage. But again, that is a marriage which they themselves came to the government and came to the district court holding up as their basis for their claim. As the Supreme Court held in Barangay, when you do so, when you seek the high gift of legislative grace of naturalization, you have the burden. They did, in trying to meet that burden, have an opportunity to be meaningfully heard, and that satisfies the Matthews test, which disposes of their constitutional claim. They could have deposed, in this case, the marriage parties, their own father and their stepmother, and they did so. They could have called their father and the stepmother, and for whatever reason, they did not. It was up to the government to call Mr. Nathieff, the father, and for the government to attempt to call the stepmother, Sarah Mies, at trial. If there are no other questions, Your Honor, we again would ask this Court to affirm the decision of the district court. Thank you, Counsel. Thank you, Your Honor. Your bottle. There's a lot that I'd like to say in response to counsel, but let me try to summarize it very briefly. The issue of whether they had an opportunity to be meaningfully heard is briefed, and it's important. They did not have an opportunity to be meaningfully heard, as opposed to being heard for the reasons that I've indicated. They should not be required to bring in non-parties to this type of proceeding and put on a whole case about marriage fraud. By the way, we did not depose those parties. The government deposed those parties. We did not believe it was incumbent upon us to have to depose those parties. We had the burden only of proving entry, which we had, and that they were lawful permanent residents, which they showed at trial, as the government has admitted, kind of. So the consequences here are quite serious to my clients. I wish it were as rosy as Mr. Chen has indicated, but it's not very easy for them to get through a removal proceeding or to get some other type of a remedy, and that's why this is of significant importance. I also want to address the issue that he raised, that I have conceded something. So the mere fact that facts are capable of two different constructions does not mean that there is no basis for this court to overturn the finding when the significant part of this is that if you read the entire part of page 20, and I'm not going to try to read it all now that he quoted from, the significant part is that the judge did not focus on the intent standard in looking at those facts. So, yes, if you just look at the facts without looking at the marital intent standard and what the parties said and whether there was anything to indicate that they were lying, then, yes, those facts admit of two possible constructions. But once you focus in on the intent standard, that goes away. The intent standard should not be different whether it's an arranged marriage or otherwise. The standard should be the same. And, yes, I want to take away any question here that we view the father as a sinner as well. He took a very embarrassing misstep. He went into this marriage with all good faith and intention that it would be a marriage for a lifetime. That was his testimony and that was the testimony of the stepmother. But it didn't happen that way. The standard with that marriage, as with other marriages, is if it doesn't work out, that doesn't defeat the viability of the marriage, doesn't defeat the bona fides of the marriage. This idea of the payment being a bribe, the stepmother herself testified that that was considered part of Cambodian custom, the dowry, and they were both agreed on that. There is obvious evidence in light of the stepmother's deposition testimony. If that is, in fact, considered, we think it should not be, and I'm not going to have time to argue that. But there's significant evidence that the testimony of the agent who got the stepmother to sign a statement induced her to make fraudulent statements, and that itself should also be taken into consideration. All right, counsel, you've used your time, the rebuttal time. Thank you both for your arguments. The case just argued is submitted for decision by the court that completes our calendar for today. We are in recess until 10 o'clock a.m. tomorrow morning. All rise.
judges: GOULD, RAWLINSON, BRESS